**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Stephen D. Simrill*
*Assistant United States Attorney*
*Stephen.Simrill@usdoj.gov*

*36 S. Charles Street*
*Suite 400*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4850*
*MAIN: 410-209-4800*

September 30, 2026

The Honorable Douglas R. Miller
United States Magistrate Judge
101 W. Lombard Street
Baltimore, Maryland 21201

**Re: United States v. Nathaniel Santiago**
**Criminal No. ABA-26-316**

Dear Judge Miller:

The defendant, Nathaniel Santiago, is scheduled to appear before the Court on Thursday, October 1, 2026, at 4:00 p.m. for a detention hearing. On September 17, 2026, Mr. Santiago was charged by indictment with three counts: one count of 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Prohibited Person); one count of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances), and one count of 18 U.S.C. § 924(c)(1) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime).

For the reasons outlined below, no condition or combination of conditions will reasonably ensure the safety of the community and ensure Mr. Santiago's appearance in Court.

## I. Background

On May 26, 2026, members of the Baltimore Police Department ("BPD") observed Mr. Santiago engage in a suspected hand-to-hand drug transaction in the 6600 block of Graceland Avenue in Baltimore, Maryland. After law enforcement executed a traffic stop on Mr. Santiago's drug customer and the recovery of the cocaine that Mr. Santiago sold to that customer, law enforcement attempted to arrest Mr. Santiago.

Officers exited their patrol vehicle and approached Mr. Santiago, who was sitting on a bicycle. Mr. Santiago got off the bicycle and ran away from the officers, who pursued him. Mr. Santiago ran across the deck of a nearby restaurant and jumped off the deck and into the street. As he did so, Mr. Santiago dropped a firearm. As two officers caught Mr. Santiago and brought him to the ground, Mr. Santiago struggled with the officers and yelled towards a nearby individual, "hey cuz, get the gun cuz, grab that bitch yo." These events were partially captured by the body worn cameras (BWC) of the BPD officers.

Immediately below is a screen capture of the BWC footage from May 26, 2026. It shows Mr. Santiago fighting with officers and the firearm which he dropped (both highlighted with a yellow circle).[1]




Officers were eventually able to subdue Mr. Santiago and place him under arrest. From his person, officers recovered 2 baggies of cocaine. Later that evening, officers recovered a bag which had been on Mr. Santiago's bike and that bag contained suspected marijuana, a scale for weighing drugs, additional cocaine, and 20 rounds of ammunition that was the same caliber as the firearm which Mr. Santiago dropped. That firearm was loaded with eight rounds in the magazine and one in the chamber.

Mr. Santiago's conduct on May 26, 2026, is illustrative of the reasons he should be detained pending trial. Mr. Santiago's refusal to submit to lawful authority, willingness to resort to physical violence against law enforcement and otherwise, and inability to conduct himself in a lawful manner require the Court to detain him.

## I. Legal Standard and Analysis of 18 U.S.C. § 3142 Factors

The Government's burden when seeking detention based on community safety is clear and convincing evidence, and a preponderance of the evidence to determine whether the defendant is a flight risk. *United States v. Anderson*, No. ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr.

[1] At the detention hearing, the Government will officer a portion of the officer's BWC footage. It is being provided to the Court in advance of the hearing as Exhibit 1.

20, 2020). When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, 2015 WL 2374229, at *2 (D. Md. May 15, 2015). The factors a court must consider in determining whether a defendant shall be detained pending trial are outlined by 18 U.S.C. § 3142(g). The factors are as follows:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, 2015 WL 2374229, at *2 (D. Md. May 15, 2015). The § 3142 factors establish that the Defendant should be detained pending trial.

As a threshold matter, because this case involves an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), "subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the Court finds there is probable cause to believe the person committed the charged offense. 18 U.S.C. § 3142(e)(3). There is clear probable cause here, as recognized by a grand jury in indicting Mr. Santiago for 21 U.S.C. § 841 and related offenses. Thus, there is a rebuttable presumption that Mr. Santiago should be detained pending trial.

### a. History and Characteristics of the Defendant & Danger to the Community

Mr. Santiago's history and characteristics show that pretrial detention is required because he will pose a danger to the community. Mr. Santiago has engaged in a pattern of conduct that has involved three consistent types of unlawful behavior: (1) dealing narcotics while possessing firearms, (2) reckless flight from law enforcement, and (3) violence.[2]

*First*, Mr. Santiago possessed distribution amounts of narcotics May 2014 (heroin and cocaine), November 2014 (heroin), September 2015 (heroin), and December 2015 (cocaine and 95 clear capsules). The September 2015 incident involved a firearm. While these incidents may have occurred over a decade ago, the instant case shows that Mr. Santiago has not aged out of what the defense may attempt to cabin as youthful conduct.

*Second*, Mr. Santiago attempted to flee from law enforcement in May 2014, November 2015, December 2015, and March 2021. The incident in November 2014 involved the crash of three other cars and Mr. Santiago's loss of control of his vehicle, leading to his car crashing into a fence, followed by Mr. Santiago's attempt to flee on foot. The incident in March 2021 involved a

[2] Exhibit 2 provides an overview of Mr. Santiago's previous convictions.

high-speed car chase in West Virginia, after which Mr. Santiago broke into someone's home before being arrested.

*Third*, Mr. Santiago's convictions in September 2015, December 2015, and May 2022 involved violence and threats. In September 2015, after being arrested, Mr. Santiago told a police officer that he would kill the police officer if he found him on the street. In December 2015, Mr. Santiago kneed a police officer in the face while being arrested. In May 2022, while incarcerated Mr. Santiago fought another inmate, who had to go to the hospital with multiple puncture wounds in his back. Mr. Santiago was heard bragging about that event the next day.

This pattern of conduct—dealing narcotics, reckless flight from law enforcement, and violence—continues into the present. On April 15, 2026, a police officer attempted to detain Mr. Santiago after a traffic stop. Mr. Santiago fled; he ran to a United States Postal Services facility, where he stole a jacket and satchel. When police officers later attempted to detain him, he resisted arrest, kicking a police officer which bruised the officer's arm. The police officer who originally stopped Defendant found a firearm, cocaine, and methamphetamine pills in Mr. Santiago's car. The police officer found the gun on the driver's floorboard. A photo showing the firearm in the vehicle is immediately below.



Figure 2.2: photo of firearm recovered from Mr. Santiago's car on April 15, 2026

On May 10, 2026, police officers responded to a firearm discharge in Baltimore, Maryland. The officers collected twenty-nine fired cartridges and three fired projectiles from the scene. Some bullets went into houses on the block. A NIBIN report connects the cartridges recovered from the scene of the May 10, 2026 shooting to the gun recovered from Mr. Santiago in the instant case, recovered on May 26, 2026. A witness took a photo of an unknown black male wearing a white shirt, black pants, and white shoes carrying a gun. Law enforcement officers believe that the photo shows Mr. Santiago possessing a firearm and that he was the one responsible for the discharging.



2.1: photo of individual in May 10, 2026 discharge



Figure 2.2: photo of Defendant

While Mr. Santiago is not currently charged with the May 10, 2026 discharging, he was charged in Baltimore County for the April 15, 2026 incident. These incidents are further examples of the danger Mr. Santiago will pose to the community if he is released. He has repeatedly shown that he is willing to engage in violent and reckless conduct to avoid being brought to justice. This behavior has placed the lives of innocent bystanders and law enforcement in danger. Mr. Santiago's attempt to flee, subsequent fight with officers, and request that a third-party involve themselves in his efforts to avoid accountability by picking up his firearm illustrate this trend. Even if the instant case were an outlier, and it is not, the two other instances discussed above establish that Mr. Santiago's dangerous behavior cannot be restrained. Law enforcement currently believes he was involved in a shooting in which 29 rounds were discharged and several of those rounds hit community members' homes. And, Mr. Santiago attempted to flee from a traffic stop, abandoning a firearm and narcotics in the vehicle he was operating.

Given Mr. Santiago's documented behavior, there is no basis for the defense to argue or the Court to conclude that Mr. Santiago will conform himself to any of the restrictions the Court could place upon him via a Release Order, no matter how severe. Even when in a carceral setting, Mr. Santiago has failed to act lawfully and conform himself with the restrictions imposed in that setting.

Mr. Santiago is a danger to the community and should not be released.

**b. Nature and Circumstances of the Offense**

The charged crimes are serious and demonstrate the Defendant's dangerousness. *See United States v. Mancilla*, 155 F.4th 449, 452 (5th Cir. 2025) ("Drug trafficking is an inherently dangerous activity due to the intrinsic violence of the drug trade.") (cleaned up). Here, Mr. Santiago's possession of a loaded firearm increased the inherent danger of his drug sale.

The circumstances of Mr. Santiago's offense further weight towards detention. Mr. Santiago's ran from police officers and forcibly resisted arrest. He yelled for an individual to grab a loaded firearm while he fought with the police officers, placing the lives of the police officers, the individual, and all those around them in a life-threatening situation.

**c. Weight of the Evidence**

The weight of the evidence is strong. BPD officers will testify as to Mr. Santiago's initial sale of drugs. Body worn camera footage shows BPD officers' interaction with Mr. Santiago's customer, the pursuit and arrest Mr. Santiago Defendant, the recovery of cocaine on Mr. Santiago's person, and the recovery of Mr. Santiago's bag. Lab reports confirm that the suspected cocaine recovered was indeed cocaine and that Mr. Santiago's firearm was operable.

**II. Conclusion**

For the reasons stated above, there is no condition or combination of conditions that would reasonably assure the safety of the community and Mr. Santiago's future appearance in Court. Mr. Santiago's risk of flight in particular weighs considerably in favor of detention. The Government respectfully requests that Mr. Santiago be detained pending trial.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

*/s/*
Stephen Simrill
Assistant United States Attorney

Cc via e-mail Sedira Banan, Esq.

## Exhibit 2

See hardcopy CD.

**Exhibit 2**

Reviewing Defendant's criminal history and the underlying statements of probable cause reveals the following:

- **May 2014**: Defendant was convicted of the Possession with the Intent to Distribute a Controlled Dangerous Substance and received a sentence of probation. Defendant fled from police officers in a car then on foot. Police officers recovered 17 gel capsules containing suspected heroin and suspected cocaine from him.

- **November 2014**: Defendant was convicted of possession with the intent to distribute a controlled dangerous substance, and he was sentenced to four years incarceration. He was also found guilty of violating his probation, for which he was sentenced to three years, eleven months, and twenty-nine days of incarceration. Defendant fled in a car, being hit by another car after he ran a red light. Defendant hit another car, lost control and went off the road into a large chain link fence. Defendant fled on foot before being caught. Police officers recovered 30 gel caps with suspected heroin.

- **September 2015**: Defendant was convicted of firearm/drug trafficking crime, and he was sentenced to five years of incarceration. After stopping Defendant pursuant to a traffic stop, police officers recovered 90 clear capsules with suspected heroin and a black handgun, which was loaded. On the way to the station, Defendant stated to the police officer, "I may be a little guy but if I ever see you on the street I will fuck you up" and that he would shoot the police officer.

- **December 2015**: Defendant was convicted of resisting arrest, and he was sentenced to ninety days of incarceration. After stopping being stopped pursuant to a traffic stop, Defendant gave police officers a fake name, tried to run away from police officers, and then kneed a police officer in the face upon being detained. Police officers recovered a scale, suspected cocaine, and 95 clear plastic capsules. In addition, during a strip search officers found an additional bag in Defendant's mouth containing Oxycodone pills.

- **March 2021:** Defendant was convicted of burglary nighttime, fleeing with reckless indifference, destruction of property, and the transport of drugs to jail. Defendant received the sentence of 1-15 years for the burglary count. A West Virginia News Station wrote an article about this even titled "Car chase in Wyoming County turns into home invasion before suspects arrested."[3] The article explains how Defendant took police officers in a high-speed car chase, hit a fence, ran into the woods, and then broke into someone's house before being arrested.

- **May 2022:** Defendant was convicted of inmate in possession of contraband. He was sentenced to 2-10 years to run concurrently with the Wyoming County Sentence. Defendant fought another inmate, who had to go to the hospital and who had multiple puncture wounds in his back. Defendant stated the next day "that's why Rose has all them holes in him."

[3] WVNS, *Car Chase in Wyoming County Turns into Home Invasion Before Suspects Arrested*, WVNS (Mar. 15, 2021), https://www.wvnstv.com/top-stories/car-chase-in-wyoming-county-turns-into-home-invasion-before-suspects-arrested/.